AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JUN 28 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) Case No. |
| Samsung Galaxy Note | ) |
| IMEI: 359488091266274 | ) '19MJ 2716 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-1, incorporated herin by reference

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B-1, incorporated herin by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. Section 1324 | Transportation of Aliens for Financial Gain |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Jonathan M. Imus, CBP Officer
Printed name and title

Sworn to before me and signed in my presence.

Date: 6/28/19 at 4:24 PM

_____
Judge's signature

City and state: San Diego, California

U.S. Magistrate Judge Barbara L. Major
Printed name and title

# AFFIDAVIT

I, Jonathan M. Imus, United States Customs and Border Protection Enforcement Officer, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. On May 31, 2019 the Honorable Karen S. Crawford issued a search warrant for **Target Device #1**.[1] The search warrant was executed, however, no search could be conducted due to the phone's security encryption passcode, and the government did not have the passcode.

2. On June 25, 2019, a Customs and Border Protection officer obtained additional information regarding **Target Device #1**'s passcode, which may provide access to the phone.

3. I now make this affidavit in support of an application for a search warrant for a Samsung Galaxy Note, IMEI: 359488091266274 (**Target Device #1**) seized from defendant Markquiste Morgan on or about March 23, 2019, incident to his arrest for smuggling one illegal alien into the United States in violation of 8 U.S.C. § 1324 within the Southern District of California. **Target Device #1** is in the possession of the United States Customs and Border Protection within the Southern District of California. **Target Device #1** is further described in Attachment A-1, incorporated herein by reference.

4. I seek authority to search **Target Device #1** for evidence of crimes, specifically violations of Title 8, United States Code, Section 1324, further described in Attachment B-1 incorporated herein by reference.

5. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Customs and Border Protection Officers. Dates and times are approximate.

---

[1] 19MJ2267-KSC

1

## EXPERIENCE AND TRAINING

6. I am a United States Customs and Border Protection Officer and have been so employed since February 2009. I am currently assigned to the San Ysidro, California Port of Entry.

7. In the course of my duties, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; the transportation and harboring of undocumented aliens within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by undocumented aliens to illegally gain entry or remain in the United States.

8. During my tenure as a Customs and Border Protection Enforcement Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

9. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators or illegal aliens in order to further their criminal activities. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for bringing illegal aliens into the United States are typically in telephonic contact with co-conspirators and/or the sponsors of illegal aliens immediately prior to and/or following the crossing of the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United

States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.

10. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Based upon my training and experience as a Customs and Border Protection Officer, and consultations with law enforcement officers experienced in alien smuggling investigations, I am also aware that:

   a. Alien smugglers will often use cellular telephones because they are mobile, and they afford smugglers instant access to telephone calls, text, web, and voice messages.
   b. Alien smugglers will often use cellular telephones because they are able to monitor the progress of the aliens while the conveyance is in transit.
   c. Alien smugglers will use cellular telephones to synchronize an exact drop off and/or pick up location and time of the aliens.
   d. Alien smugglers will often use cellular telephones to notify or warn their accomplices of law enforcement activity.

## FACTS SUPPORTING PROBABLE CAUSE

11. On March 23, 2019, at approximately 5:10 p.m., defendant Betty Mae Taulbee entered the United States from Mexico through the Otay Mesa, Port of Entry as the driver of a U-Haul cargo van. Co-defendant Markquiste Morgan was seated in the passenger seat of the van.

12. A United States Customs and Border Protection (CBP) officer contacted the defendants at the primary check point and requested their identification. After being presented with valid identification cards, the officer asked where the defendants were headed and they stated they were headed to Chula Vista.

13. A cursory inspection of the vehicle was done by sliding open the side door of the cargo van. Upon inspecting a plastic bin located behind the driver in the cargo van, the CBP officer located a person concealed within. The CBP officer commanded defendant

3

1 Betty Mae Taulbee to turn off the van. She did not comply and accelerated the vehicle
2 forward while making a sharp turn. The CBP officer in the van was ejected from the van
3 and sustained injuries to his arm. The person concealed in the bin was also ejected from
4 the van. The vehicle was ultimately blocked by other vehicles in the POE allowing officers
5 to take both defendants into custody.

6     14. The person concealed in the plastic bin was interviewed and stated that he is
7 a citizen of China with no documents or entitlements to enter the United States. He
8 explained that he made arrangements to be smuggled into the United States and would pay
9 $2,000.

10     15. Taulbee was read her Miranda rights and elected to provide a statement. She
11 admitted to knowing of the individual concealed in the vehicle and stated that she would
12 be paid $1,000 for the smuggling act. She further explained that a person named "Toni"
13 invited her and the co-defendant, whom she stated was her fiancé, to stay in a hotel in
14 Tijuana, Mexico. At the hotel, Toni introduced both defendants to "Marin." Marin
15 propositioned both defendants with a job. The job was to retrieve $22,000 of United States
16 currency from a person and bring it back to him. Taulbee claimed Marin would pay her
17 $8,000 to do so. She then explained that Marin told her he was involved in alien smuggling
18 across the border. After she and the defendant interacted with Marin for several days, Marin
19 asked both defendants to meet him at Hotel Suelo in Tijuana, Mexico on March 22, 2019.
20 After spending time with Marin in his room, Marin told Taulbee that today was not a good
21 day to smuggle aliens. The next day, as both defendants got into the cargo van Marin
22 pointed to the area behind the driver's seat and pointed. Taulbee knew he was referring to
23 someone hiding in the vehicle. Later in her interview she claimed that it was all her fault
24 and that her co-defendant had nothing to do with it. **Target Device #1** was found and
25 seized from defendant Markquiste Morgan's person incident to his arrest.

26     16. On June 6th, 2019 Taulbee pled guilty to a violation of Title 8, U.S.C. section
27 1324(a)(2)(B)(ii). In her factual basis, Taulbee admitted that on March 23, 2019, she and
28 her co-defendant Markquiste Nathaniel Morgan used a U-haul truck acquired by Angel

4

Woods, a friend of Morgan, to transport an illegal alien into the United States. Several days before the attempt to smuggle the illegal alien, Taulbee was informed by Morgan that they would be smuggling a human. On the day of the smuggling effort Taulbee was told by Morgan to leave a motel room (purchased by a man named Marin) in Mexico and take the U-Haul driver seat and drive to the border. About ten minutes before Taulbee reached the border she sensed someone was in the U-Haul and asked Morgan if the illegal alien was in the U-Haul. He told her there was an illegal alien in the U-Haul.

17. On June 25, 2019, Taulbee, accompanied by her attorney Charles Guthrie, agreed to provide additional information to Customs and Border Protection Officer Imus and Assistant United States Attorney Kareem A. Salem. During their meeting, Taulbee explained that Morgan used his phone to communicate with Marin to organize the alien smuggling venture. Taulbee claimed to know the passcode to **Target Device #1** and provided that passcode to Officer Imus.

18. Based upon my experience and investigation in this case, I believe that defendants, Taulbee and Morgan, and other persons, as-yet-unknown, were involved in an alien smuggling venture from Mexico into the United States and that Morgan used **Target Device #1** to coordinate with them to bring the aliens into the United States and transport them further into the United States. I also believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of **Target Device #1**, which may identify other persons involved in alien smuggling activities.

19. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of the aliens. Given this, I respectfully request permission to search **Target Device #1** for data beginning on January 23, 2019, up to and including March 24, 2019.

## METHODOLOGY

20. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect **Target Device #1** and subject it to analysis. All forensic analysis of the data contained within **Target Device #1** and its memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within ninety (90) days absent further application to this Court.

## CONCLUSION

23.  Based on all of the facts and circumstances described above, I believe that probable exists to conclude that Defendant used **Target Device #1** to facilitate the offense of alien smuggling.  **Target Device #1** likely was used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B-1, which constitutes evidence of violations of Title 8, United States Code, Section 1324.  I also believe that probable cause exists to believe that evidence of illegal activity committed by Defendant and others continues to exist on **Target Device #1**.  Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
JONATHAN M. IMUS
CBP Enforcement Officer
U.S. Customs and Border Protection

Subscribed and sworn to before me this __28__ day of June 2019.

_____
HONORABLE BARBARA L. MAJOR
United States Magistrate Judge

7

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

Samsung Galaxy Note
IMEI: 359488091266274
**(Target Device #1)**

The **Target Device #1** is currently in the possession of the United States Customs and Border Protection at 880 Front Street, San Diego, California 92101.

# **ATTACHMENT B-1**
ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Device #1** for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of January 24, 2018, to March 24, 2019, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, **Target Device #1**;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of the bringing of illegal aliens into the United States in violation of 8 U.S.C. § 1324.